EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico<br><br>Recurrido<br><br>v.<br><br>Lory Frey<br><br>Peticionaria | Certiorari<br><br>2017 TSPR 97<br><br>198 DPR ____ |

Número del Caso: CC-2017-455

Fecha: 7 de junio de 2017

Tribunal de Apelaciones:

     Región Judicial de Arecibo-Aguadilla, Panel X

Abogado de la parte Peticionaria:

     Lcdo. Arturo Guzmán Guzmán

Materia: Resolución del Tribunal con Votos Particulares Disidentes.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Recurrido

        v.                   CC-2017-455       Certiorari

Lory Frey

    Peticionaria

RESOLUCIÓN

San Juan, Puerto Rico, a 7 de junio de 2017.

Examinadas la *Solicitud de Paralización de los Procedimientos ante el Honorable Tribunal de Primera Instancia* y la *Petición de Certiorari* presentadas en el caso de epígrafe, se provee no ha lugar a ambas.

Notifíquese **inmediatamente** por teléfono, fax o correo electrónico y, posteriormente, por la vía ordinaria.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez proveería no ha lugar en esta etapa. Los Jueces Asociados señores Estrella Martínez y Colón Pérez emitieron Votos Particulares Disidentes, respectivamente. La Jueza Presidenta Oronoz Rodríguez no intervino.

Juan Ernesto Dávila Rivera
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Recurrido

      v.                        CC-2017-455       Certiorari

Lory Frey

    Peticionaria

Voto particular disidente emitido por el Juez Asociado SEÑOR ESTRELLA

San Juan, Puerto Rico, a 7 de junio de 2017.

Ante la evidente realidad de que en este caso se lesionan derechos constitucionales fundamentales y se atenta contra el derecho de la imputada de delito a que se le garantice el debido proceso de ley, disiento de la determinación que hoy toma una Mayoría de este Tribunal. Contrario a lo dictaminado, considero que la controversia ante nuestra consideración ameritaba la oportuna intervención de este Tribunal, toda vez que nos enfrenta a una lamentable situación en la cual se expuso a una persona a los rigores de un proceso penal sin considerar las barreras

lingüísticas que le impidieron entender y comprender el proceso criminal. De esta forma, es indudable que en los procedimientos celebrados en contra de la imputada de epígrafe hubo una ausencia crasa de las garantías mínimas del debido proceso de ley, a tal grado que no se cumplió con el requisito elemental de una notificación adecuada que le permitiera comprender los cargos presentados en su contra.

Examinemos el contexto fáctico y procesal en que se desató la controversia de epígrafe.

I

A la Sra. Lory Frey (señora Frey o peticionaria) se le imputó la comisión de tres delitos graves y dos menos graves por violación a la Ley Núm. 22-2000, según enmendada, Ley de Vehículos y Tránsito de Puerto Rico, por hechos alegadamente ocurridos el 16 de marzo de 2017. Así las cosas, el 17 de marzo de 2017 se celebró la vista de determinación de causa probable para arresto (Regla 6). Al comienzo de la vista de Regla 6, se le informó al Juez que presidía la vista que la señora Frey no tenía la capacidad para entender y comprender el idioma español. Ante ello, se determinó cualificar como intérprete a la agente de la Policía de Puerto Rico que mantuvo custodiada a la peticionaria hasta que fue llevada a Regla 6. Cabe señalar que la referida agente estaba ejerciendo sus funciones como miembro de la uniformada al mismo tiempo en que fungió como intérprete de la imputada. Además, según alegó la señora Frey, la agente pertenecía a la misma unidad policiaca que

los agentes investigadores que testificaron en contra de la imputada.

Celebrada la vista de Regla 6, el Juez determinó causa para arrestar a la peticionaria y pautó la celebración de la vista preliminar al amparo de la Regla 23 de Procedimiento Criminal. En consecuencia, el 6 de abril de 2017, la señora Frey presentó ante el Tribunal de Primera Instancia una moción de desestimación al amparo de la Regla 64(p) de las de Procedimiento Criminal. Esencialmente, solicitó que los cargos en su contra fueran desestimados, conforme a lo dispuesto en Pueblo v. Branch, 154 DPR 575 (2001). Ello, toda vez que no se le garantizó el debido proceso de ley al asignarle como intérprete una agente de la Policía que no estaba debidamente cualificada para ejercer tal función; que custodió a la imputada en su carácter de oficial del orden público; que laboraba en la misma división que los agentes investigadores que presentaron los cargos en contra de la imputada, y que no fue juramentada en la función de intérprete, lo cual minó la confiabilidad del proceso.

Por su parte, el Ministerio Público se opuso a la desestimación fundamentándose en que la moción de desestimación al amparo de la Regla 64(p) sólo procede luego de celebrada la vista preliminar, por lo cual no se extiende a la vista de Regla 6. Además, arguyó que la agente que fungió como intérprete fue cualificada por el Juez a cargo de la Regla 6 y que los procedimientos se

celebraron pausadamente para asegurar la traducción. Atendidos los planteamientos de las partes, el foro primario declaró sin lugar la desestimación, por entender que el tribunal tomó las medidas para garantizar la participación de un intérprete en Regla 6.

Inconforme, la señora Frey recurrió al Tribunal de Apelaciones y sostuvo que se le violentaron sus derechos constitucionales al asignarle como intérprete a una agente que le custodió en su carácter de oficial del orden público y cuyas cualificaciones para ejercer la función de interpretación eran cuestionables. Asimismo, presentó una solicitud para paralizar los procedimientos ante el foro primario, particularmente la celebración de la vista preliminar, hasta que se resolviera la controversia. El foro apelativo intermedio confirmó la determinación del Tribunal de Primera Instancia. Entendió que la solicitud de desestimación fue prematura por presentarse antes de la celebración de la vista preliminar. Por su parte, el Hon. Nery E. Adames Soto emitió un voto disidente, en el cual expresó que:

> [A]un reconociendo que la vista bajo la Regla 6 no es un minijuicio, ni tampoco una VP . . ., lo cierto es que una vez esté presente el imputado de delito en dicha etapa, se activan unos derechos que no pueden ser soslayados. En presencia de la imputada, el mínimo que se puede exigir bajo el debido proceso procesal es que entienda lo que allí sucedió, y que el intérprete que se designe ofrezca unas garantías básicas de confiabilidad.
> ….
> [H]aber designado como intérprete a la Agente de la Policía, que trabaja en la misma División de

los Agentes que testificaron en contra de la peticionaria en la Regla 6, lesiona el sentido de juego limpio que debe acompañar al proceso. <u>Voto disidente del Juez Adames Soto</u>, Apéndice del certiorari, págs. 56 y 57.

En desacuerdo con el dictamen del Tribunal de Apelaciones, el 5 de junio de 2017, compareció ante nos la señora Frey mediante una *Solicitud de Paralización de los Procedimientos ante el Honorable Tribunal de Primera Instancia* y una petición de *certiorari*. Particularmente, señala como error lo siguiente:

> Erró el Honorable Tribunal Apelativo, al sostener la determinación del Tribunal de Primera Instancia mediante la cual se declaró no ha lugar de [sic] la solicitud de desestimación al amparo de la Regla 64 P de Procedimiento Criminal, bajo el fundamento errado de que "el Tribunal tomó las medidas para garantizar la participación de un intérprete en el proceso criminal", cuando el cumulo [sic] de circunstancias procesales minaron y soslayaron la asignación de interprete [sic] y por ende viciaron irreparablemente las garantías constitucionales mínimas del debido proceso de ley privando a la imputada de sus derechos a un debido proceso de ley en su modalidad procesal y sustantivo por razón de su impedimento lingüístico para entender y comprender el idioma español, acción inconsistente e incongruente con la normativa establecida en <u>Pueblo v. Branch</u>, 154 DPR 575 (2001).

Así las cosas, una Mayoría de este Tribunal determinó proveer no ha lugar tanto a la solicitud de paralización como a la petición de *certiorari* presentadas por la señora Frey. En consecuencia, por los fundamentos que expondré a continuación, no me queda más que disentir del curso de acción seguido.

## II

Sin lugar a dudas, este caso nos presentaba una gran oportunidad para evitar que continúen perpetuándose injusticias de esta índole, en las cuales se les priva a los ciudadanos de sus derechos constitucionales por diversas barreras producto del origen social, impedimentos físicos o de naturaleza lingüística, como el caso que nos ocupa. No solamente se han obviado derechos consagrados en la Constitución de Puerto Rico como en la Constitución Federal, sino que se han vulnerado garantías fundamentales contenidas en normas internacionales aplicables en **toda la esfera penal.** Ello, en un llamado "balance de intereses" en el que prevalece el interés del Estado de encauzar sus casos sobre el derecho constitucional que le asiste a un imputado de delito de que se le garantice el debido proceso de ley.

Como es sabido, la garantía constitucional del debido proceso de ley está consagrada en el Artículo 2, Sección 7 de la Constitución de Puerto Rico y en la Enmienda XIV de la Constitución Federal. Asimismo, es preciso señalar que si bien nuestra Constitución y la Constitución Federal no reconocen expresamente un derecho constitucional a que el tribunal le asigne un intérprete al imputado de delito, se ha interpretado que ese derecho emana de la garantía constitucional a un debido proceso de ley. Pueblo v. Branch, 154 DPR 575 (2001); Pueblo v. Tribunal Superior, 92 DPR 596 (1965); Marino v. Ragen, 332 US 561 (1947). Véase también Michael Gardner & Lynn W. Davis, Justicia para todos:

_Ensuring Equal Access to the Courts for Linguistic Minorities_, 9 Utah B.J. 21 (2006). Resulta importante destacar que en _Pueblo v. Branch_, supra, reconocimos que existe una obligación constitucional de proveer un intérprete a un imputado de delito que no comprende el idioma español, al amparo de la cláusula constitucional que garantiza el debido proceso de ley. Aun cuando en aquel entonces la controversia estaba enmarcada en las incidencias ocurridas en la vista preliminar, opino que igual trato debe aplicarse para la vista de Regla 6.

Nociones fundamentales de justicia, según han sido atendidas en el Derecho Constitucional e Internacional, me mueven a salvaguardar el derecho de los ciudadanos a un debido proceso de ley, mediante el reconocimiento de su derecho de contar con un intérprete debidamente calificado durante **todo el procedimiento criminal** llevado en su contra, cuando ha demostrado su incapacidad lingüística para comprender tales procesos. Primeramente, cabe mencionar que, en previsión de la discriminación idiomática, la Declaración Universal de Derechos Humanos dispone que toda persona tiene todos los derechos y libertades allí proclamadas, sin distinción alguna de idioma, origen nacional o cualquier otra condición. Declaración Universal de Derechos del Hombre, A.G. Res. 217 (III) A, N.U. Doc. A/RES/217 (III) (10 de diciembre de 1948), http://www.un.org/es/comun/docs/?symbol=A/RES/217 (III). Similar disposición se incluyó en el Artículo 1 de la

Convención Americana de Derechos Humanos. Convención Americana sobre Derechos Humanos 4 (22 de noviembre de 1969), https://www.oas.org/dil/esp/tratados_B-32_Convencion_Americana_sobre_Derechos_Humanos.pdf. Asimismo, en el Artículo 8 de la citada Convención Americana se establece el derecho de **toda persona inculpada de delito a ser asistido gratuitamente por un traductor o intérprete, si no comprende o no habla el idioma del juzgado o tribunal.** Id. De igual modo, en el Artículo 14(f) del Pacto Internacional de Derechos Civiles y Políticos se reconoce que todo imputado de delito tiene el derecho a **ser informado sin demora, en un idioma que comprenda** y en forma detallada, de la naturaleza y causas de la acusación formulada en su contra. Pacto Internacional de Derechos Civiles y Políticos, A.G. Res. 2200 (XXI), N.U. Doc. A/RES/2200 (XXI) (16 de diciembre de 1966), http://www.un.org/es/comun/docs/?symbol=A/RES/2200 (XXI)&Lang=S&Area=RESOLUTION. Cabe destacar que se ha interpretado que ese derecho emana, a su vez, de los derechos que tienen las minorías étnicas, religiosas o lingüísticas a tener su propia vida cultural y emplear su propio idioma. FRANCISCO ALBERTO GÓMEZ SÁNCHEZ TORREALVA, EL ACCESO A UN INTÉRPRETE COMO MANIFESTACIÓN DEL EJERCICIO DEL DERECHO DE DEFENSA: APUNTES SOBRE LA IDENTIDAD CULTURAL Y LOS DERECHOS LINGÜÍSTICOS 9 (2009).

Por otra parte, con relación a la función del intérprete, se ha reconocido la necesidad de asignar una persona que no sólo cuente con conocimientos sobre el idioma extranjero en cuestión, sino que pueda transmitir las ideas

dentro del contexto en el que se enuncian. Id., pág. 11. En ese sentido, es importante designar profesionales que posean pleno conocimiento de los idiomas y de la terminología utilizada en Derecho, de manera que el sujeto auxiliado comprenda a sus interlocutores y estos últimos, a su vez, entiendan los argumentos expresados por el imputado en su idioma nativo. Id., págs. 11-12. También se ha expresado que, en aras de que la participación del intérprete sea eficaz y garantice los derechos del imputado, se debe evitar incurrir en el error de creer que un individuo puede ejercer la función de intérprete por el mero hecho de ser bilingüe, pues más allá de eso, el intérprete tiene que ser bicultural y estar capacitado técnicamente para interpretar. Id., pág. 12 (citando a THE CONNECTICUT JUDICIAL BRANCH, Servicios de interpretación y traducción, en http://www.jud.ct.gov/Publications/Spanish/es212s.pdf). No menos importante, el elemento de neutralidad y ausencia de conflicto de intereses en la función interpretativa es vital para garantizar el cumplimiento de esta normativa y del debido proceso de ley.

Por otro lado, en lo atinente a las etapas del procedimiento criminal en que participa el intérprete, en la Unión Europea se ha contemplado que éste participe desde la etapa investigativa, pues permite que la persona que desconoce el idioma en el que es procesada tenga conocimiento de los hechos que se le imputan y pueda ejercer de manera adecuada su derechos de defensa. Id. Igualmente, se ha reconocido que el acceso a un intérprete constituye

una manifestación del ejercicio del imputado para defenderse, toda vez que protege su derecho a no quedar en estado de indefensión en cualquier etapa del proceso judicial. Id., pág. 13.

**III**

Indiscutiblemente, en este caso hubo una ausencia crasa de las garantías mínimas del debido proceso de ley, a tal grado que la señora Frey no logró entender y comprender los cargos que se le imputan ni el proceso llevado en su contra. Particularmente, el Juez a cargo de la vista de Regla 6 tuvo conocimiento de la falta de capacidad de la peticionaria para entender y comprender el idioma español, por ser el inglés su idioma nativo. De igual forma, debía conocer que como garantía mínima del debido proceso de ley le asistía el derecho a un intérprete neutral debidamente cualificado, de manera que la señora Frey pudiera ser notificada adecuadamente de los cargos que se le imputan, entendiera el proceso criminal llevado en su contra, pudiera defenderse y fuera encausada en un procedimiento justo.

No obstante, optó por asignar como intérprete a un componente del órgano investigativo estatal, a saber: una agente de la Policía. Como situación agravante, su dominio del idioma inglés no quedó debidamente acreditado, y se trata de la misma agente que custodió a la peticionaria en su carácter de oficial del orden público y que laboraba con los agentes investigadores que presentaron cargos en su

contra. Ante tales circunstancias, queda meridianamente claro que la intérprete designada no reúne los requisitos de un intérprete neutral y libre de conflictos de intereses para ejercer esa función. Resulta evidente que la confiabilidad del proceso quedó viciada. Considero que este asunto no puede tomarse livianamente, como lo hizo el Juez que presidió la Regla 6, los foros recurridos y como hoy lo hace una Mayoría de este Tribunal.

El argumento principal para abdicar a su deber de garantizarle a la señora Frey su derecho a un debido proceso de ley tiene su base en que el mecanismo procesal que provee la Regla 64(p) sólo está disponible luego de la celebración de la vista preliminar en el caso de los delitos graves. No comparto ese criterio. Considero que predomina nuestro deber de hacer cumplir las garantías constitucionales e internacionales aquí discutidas, dirigidas a salvaguardar el debido proceso de ley de la ciudadana peticionaria. Recordemos que se expuso a una imputada de delito a los rigores de un proceso penal, aun cuando quedó clara su incapacidad lingüística que le impedía comprender los cargos que se le imputaron y el proceso llevado en su contra.

**IV**

En virtud de lo enunciado, disiento del dictamen emitido por una Mayoría de este Tribunal. En su lugar, revocaría la determinación del Tribunal de Apelaciones.


                                    Luis F. Estrella Martínez
                                         Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Recurrido

       v.

                            CC-2017-0455

Lory Frey

    Peticionaria

Voto Particular Disidente emitido por el Juez Asociado señor Colón Pérez

En San Juan, Puerto Rico, a 7 de junio de 2017.

Muy respetuosamente, disentimos del curso de acción seguido por una mayoría de este Tribunal en el día de hoy. Ello, por entender que ante las circunstancias particulares de este caso -- donde a la señora Lory Frey, quien alegaba no conocer el idioma español, se le imputó la comisión de tres delitos graves y dos delitos menos grave a tenor con la Ley de Vehículos y Tránsito de Puerto Rico, Ley Núm. 22-2000, 9 LPRA sec. 5201 *et seq.* -- las garantías mínimas del debido proceso de ley que le asisten a toda persona al enfrentarse ante un procedimiento criminal no fueron salvaguardadas.

Como bien es sabido, en nuestro ordenamiento jurídico cualquier acción penal comienza con la determinación de causa probable para arrestar, al amparo de la Regla 6 de las de Procedimiento Criminal, 34 LPRA Ap. II. *Véase* además *Pueblo v. Irizarry,* 160 DPR 544, 555 (2003). Es, precisamente, desde ese momento que cualquier persona imputada de la comisión de delito queda sujeta a la jurisdicción del tribunal y, además, a responder por la comisión de los delitos imputados en un juicio adversativo. Íd., citando a D. Nevares-Muñiz, *Sumario de Derecho Procesal Puertorriqueño,* 5ta ed. rev., San Juan, Ed. Inst. Desarrollo del Derecho, 1998, pág. 43.

Asimismo, nuestro ordenamiento jurídico reconoce que, en la celebración de vista para determinar causa probable para arresto, la persona imputada allí presente tendrá derecho a *"estar asistido de abogado, a contrainterrogar a los testigos en su contra y a ofrecer prueba en su favor".* Regla 6 de las de Procedimiento Criminal, *supra.* Es decir, de esta forma, una vez se encuentra causa probable para arresto, el Estado ostenta la facultad de poder presentar la denuncia o acusación contra la persona imputada, según sea el caso. *Pueblo v. Miró González*, 133 DPR 813, 821 (1993).

De otra parte, como sabemos, una vez una persona es imputada de delito menos grave y se encuentra causa probable para arresto, la misma queda sujeta a la acción

penal, dado a que el Ministerio Público queda facultado para presentar la correspondiente denuncia por tal delito y, así, comenzar el proceso de juicio en contra de dicha persona. Sin embargo, de encontrarse causa probable para arresto por la comisión de delitos graves, previo a la celebración del juicio, nuestro esquema ordena la celebración de una vista preliminar.

Ahora bien, una determinación de causa probable para acusar, tras la correspondiente celebración de una vista preliminar, tiene el efecto de subsanar cualquier error que se hubiese suscitado en la determinación de causa probable para arresto. *Pueblo v. Padilla Flores*, 127 DPR 698 (1991); *Pueblo v. González Pagán*, 120 DPR 684 (1988). Sin embargo, tal no es el proceder en lo que respecta a los delitos menos graves. Ello puesto que, bien es sabido que la vista preliminar no se celebra ante la imputación de la comisión de este tipo de delitos. Por lo tanto, no existe la posibilidad de que un error en la determinación de causa probable para arrestar sea subsanado, previo a la etapa de juicio. Por el contrario, dicha determinación es la que activa la acción criminal y la celebración de un juicio.

Es a raíz de lo anterior, y por entender que toda persona sujeta a un procedimiento criminal en su contra debe tener a su favor las salvaguardas mínimas del debido proceso de ley, que me veo en la necesidad de disentir en el presente caso. Aquí, si bien es cierto que a la señora

Frey se le encontró causa probable para arrestar por la comisión de tres delitos graves, por los que se habrá de celebrar una vista preliminar, también se encontró causa probable para arrestar por dos delitos menos graves. Por estos últimos, como vimos, no se celebrará una vista preliminar, sino que se dará inicio a la etapa de juicio en su fondo. De este modo, me parece que la presentación de una moción al amparo de la Regla 64(p) de las de Procedimiento Criminal, *supra*, es idónea en esta etapa de los procedimientos.

La alegación de una violación al debido proceso de ley -- garantía fundamental en nuestro ordenamiento jurídico, reconocida tanto por la Constitución del Estado Libre Asociado como por la Constitución de los Estados Unidos, -- por no contar la señora Frey con un intérprete imparcial a su disposición durante la celebración de la vista de causa probable para arresto, ya que ésta no domina el idioma español, merece nuestra atención. En dicha vista se utilizó como intérprete, sin prestar juramento ante el foro primario, a una agente de la Policía de Puerto Rico (lo que podría considerarse a todas luces como una parte adversa en el procedimiento criminal). Ello nos resulta, como poco, altamente cuestionable y un atentado contra los pilares básicos del debido proceso de ley que ostenta a su favor toda persona sujeta a un proceso criminal. Es por ello que, disentimos y, en su consecuencia, hubiésemos paralizado los

procedimientos ante el foro primario y expedido el *certiorari*.

Recordemos que la garantía de un intérprete en los procesos criminales debe entenderse como un componente más de un verdadero **acceso a la justicia**.


Ángel Colón Pérez
Juez Asociado